Good morning, Your Honors. May it please the Court, my name is Robert Gerald Bernhoft, and this morning I'm privileged to represent Appellant Joseph Banister in the appeal at bar. Before the Court is a summary judgment order from Judge Dew, Nevada District, affirming on summary judgment six penalties imposed against Mr. Banister under IRC section 6102. The six penalties that remain are three penalties regarding what we'll call the Thompson penalties. One penalty regarding Mr. Coleman, and that was in a collection due process hearing. The Graham penalty, which also a collection due process hearing penalty. And then the Guthrie penalty, which is a bit separate and apart. We mentioned in the brief that this was a five or six year civil investigation investigating whether Mr. Banister had engaged in conduct subject to penalty under 6701. The investigation commenced about 30 days after his federal criminal trial concluded for tax and conspiracy charges. And I mention that in the brief because I think that, in my experience as a matter of policy, that this was a politically charged, politically motivated investigation. And when you get those sorts of investigations, you yield odd and sometimes unworkable results. You haven't brought any sort of First Amendment challenge to this proceeding, have you? No, we have not. Or any kind of malicious prosecution challenge or anything other than just defending the merits. Is that right? That's correct, Your Honor. Yes. I mention the context because over a five or six year investigation by revenue agent Shereen Hawkins, we have what remains before the Court these six penalties, a $1,000 penalty under the relevant penalty statute. The two penalties, the Coleman penalties and the Graham penalty, that are in a collection due process hearing, the conduct alleged to be subject to penalty cannot occur in a collection due process hearing, because there's a very. Is it true that your client during the CD, the collection due process hearings, actually asserted that the, that there was a possibility of reduction and or termination of the tax liability? Didn't he actually take a position which was inconsistent with what you just, what you've just argued in your brief? No, I appreciate that, Your Honor. Judge Sessions, the Coleman penalty, the statute requires that the alleged violator who's subject to penalty create a document or assist in the creation of a document that's presented to the IRS during an IRS proceeding, and that would in fact result in an understatement of liability if the IRS relies upon it. So you have to look at the actual letters, and the record at 41-25, Exhibit P, there's a letter submitted by Mr. Bannister in the collection due process hearing, and he does in fact articulate some legal theories based on the 861 regulations and some other issues. But the question of whether he had actual knowledge, whether that would yield an understatement, it can't yield an understatement in a collection due process hearing, and that's critical. So. He wasn't speaking to waste time, was he? I'm sorry? He wasn't presenting this to the government and taking the position that he took just to waste time because it was irrelevant. He was expecting it to accomplish a result, wasn't he? Yes. Yes, Your Honor. What was the result he was aiming for? Yeah. And the result he was aiming for, Mr. Bannister expounded on at length in his deposition testimony. Lengthy depositions were had. You know, I really don't need an answer. There were lengthy depositions. I need an answer to my question. What was his reason for making the statement? Yes. Mr. Bannister said, respecting Coleman, that he believed Mr. Coleman had a right to go into a collection due process hearing and challenge the. That's not answering my question. Yes, Judge. I didn't care about the depositions. I didn't care about he had a right. All right. Why did your client make the statement he did? What result was he hoping to accomplish? He was hoping to assist Mr. Coleman in exercising his First Amendment rights to challenge the agency's action. That's not much of an answer, but if that's what you're going to stand on, you'll stand on it. That was the testimony from the depositions, Your Honor. But still not telling me why he said it. What result did he expect the IRS to respond with? Did he expect the IRS to say, oh, I recognize your First Amendment right? That's not why he said it. He said it because he was hoping to cut his client's tax bill. I respectfully disagree, Your Honor. The record is very clear about what his intentions were. He was out there to defend the First Amendment right. He didn't care about what the result of his client's tax liability was. Really? In fact, Mr. Banister knew that a collection due process hearing cannot yield an understatement of tax liability. See, you're not answering the question. I think there's a reason. You're a smart man. There's a reason why you're not answering the question, because you don't want to answer the question. He was hoping to cut his client's tax bill. He would accomplish that by getting the IRS to accept less. But underlying his argument is the premise that the bill was too high in the first place. We get this all the time. In criminal sentencing, for example, there are lots of arguments based on, well, the evidence of his guilt wasn't all that great, so cut him some slack here on the other side. I respectfully disagree, Your Honor. Okay. It's hard for me to understand how the facts can line up any other way, but you can disagree all you want. I appreciate that, and I'm answering as candidly and as forthrightly as I can. Well, I know that he wasn't simply there to defend his client's First Amendment rights, because the IRS was never going to comment on what his client's First Amendment rights were. So what other reason did he have for making the statement? It was the expression and assisting his client in challenging the agency's attempt to collect the tax assessed through liens and levies. That's the process. These hearings are ordinarily talking about collection processes, but in fact, your client, during the course of those hearings, took the position that some of the modify or reduce the tax liability was to be followed. He actually took the affirmative position that, in fact, those hearings could result in a reduction and, in fact, sought it, and now you're taking somewhat of an opposite position when you come before this Court. And I'm wondering whether you are bound to the position that he took at the hearings themselves that, in fact, he was seeking reduction in the tax liability. Yeah, that's a fair question, Judge Sessions. And in the documents that were submitted by Mr. Bannister and the statements that he argued and made before the CDPH IRS appeals officers, he is using legal arguments that the IRS disdains as frivolous and vexatious and groundless and without merit. We concede the government's position on that point, but what he's doing is attempting to alleviate levies, liens, and garnishments. He knows, as an experienced IRS special agent, that there is not going to be a reduction in tax assessment. It can't happen. So are you saying that he did not seek to reduce the tax obligation in the hearings? Yes. But he was saying he was asking them to do that. So I think we're back to the question, was he making frivolous arguments in that proceeding? I don't think he was making frivolous arguments in the proceeding in 1999 and 2000. But he was saying that the tax liability should be less. He was saying that the collection procedures, liens, levies, and garnishments should not be applied. And he was making arguments for various reasons, including the fact that there were administrative errors in the individual master file and a bunch of other issues relative to that. But also because he said they didn't owe those taxes. He expressed that to the IRS appeals officer in the CDPH hearings. He's assisting his clients in challenging the agency. But as a metaphysical matter, those CDPH hearings cannot result in an understatement. But an understatement so you're disputing the meaning of understatement. Why isn't it just an understatement as soon as he understates the tax liability, as soon as he says the tax liability is less than what everyone else agrees it is? Yes, because the statute governs. And the statute says, it's very specific, and Ninth Circuit authority as well as all the other circuits say, when it's a penalty situation, it has to be construed strictly this conduct that the IRS. But the dictionary says understate means represent as less than is the case. Why isn't that the meaning of understate? Well, the statute controls whether he engaged in conducts of penalty under 6701. And he did not present documents that would in fact have yielded an understatement regarding the collection due process hearings. I mean, that is. Well, he did. He filed a document that understated, said the tax liability was less than it was. He was not arguing that the appeals officer should reduce that assessment. The appeals officer had no such authority. Could I just ask about the Guthrie letter? Yes, sir. Because that's, you're right, it's a separate kind of issue. He makes, he submits this letter about the master file. What you basically say is that he's trying to change the master file because of the processes by which IRS makes the master file. But ultimately, the Court found that really what is behind this is that he's seeking reduction in the amount of tax liability. That's the whole purpose of that letter. And how do we, how would you differ with what the district court did here? Yeah, the government argues that as well. And I don't think that that was properly decided on summary judgment. Mr. Bannister's testimony went on for 8 or 9 hours in a deposition. And that testimony is relevant to his actual knowledge and his intent. I stand here today, I'm an experienced lawyer. And I'm not going to go into the details of his testimony in your brief. Yes. And quoted it. Yes. What, did you cite any deposition testimony that said that he actually believed these positions of the tax liability being less were right? No, that really didn't come up in his deposition. The truth of the matter is he was asserting the government had an opportunity to acquire Mr. Bannister and his depo. But isn't it necessary, if you're going to say he didn't, he believed this was true so there wasn't like under cheek, the Supreme Court case cheek. He really believed this. Don't you need to point to something that says that? He didn't submit a declaration saying he really believed this or offer testimony that he really believed this. So isn't that a huge hole in your argument? No. I appreciate that, Your Honor. But respectfully, no. The statute is very clear on what is conduct subject to penalty. This conduct doesn't apply. The question of his good faith belief in sincerity and his advocacy was not at issue in the penalty proceedings. If I might, could I turn to Judge Sessions' question briefly about the Privacy Act amendment request? I wanted to really address that. I've been practicing civil tax controversy and criminal tax controversy for quite some time. I have – I don't think it's metaphysically possible for those Privacy Act records correction requests to have an impact on tax liability. And that just does not fit within the ambit of the statute. I don't profess to understand all of the details of the IMF. I've worked with them. I've decoded them. I've used them in civil and criminal proceedings. But I just don't think it's metaphysically possible for that correction request for Guthrie to understate tax liability. In fact, it doesn't. And there's no competent argument from the government that it does. With regard to the grand penalty – Sorry, sir. You're out of time. We'll give you one minute for rebuttal. Thank you. I appreciate it, Your Honor. May it please the Court. I'm Curtis Pett representing the United States. Bannister submitted documents on behalf of his clients claiming immunity from taxation based on the argument that Internal Revenue Code Section 861 shelters United States citizens from income tax liability on their United States-sourced income. The courts have uniformly held this argument to be false and frivolous. Indeed, this court imposed $8,000 in sanctions upon Mr. Bannister for raising that argument on his own behalf in a prior appeal. Bannister was disbarred from practice before the IRS for asserting this position on behalf of his clients. The administrative law judge found that clear and convincing evidence established that Mr. Bannister actually knew that the arguments that he was making on behalf of his clients were false and frivolous and that his conduct was willful and subject to disbarment. This court affirmed the disbarment and found that the evidence clearly established that Mr. Bannister's arguments were not put forth in good faith, were not the result of an innocent mistake, but rather reflected a conscious disregard of known legal duties. Could I just jump ahead? In the CDP hearings, I'll get that right eventually, did Mr. Bannister advocate for a reduction or elimination of the tax liability and did he in fact represent to the officer that they had the ability to reduce the tax obligation in that due process hearing? Yes, Your Honor. In the case of Coleman, the request for the CDP hearing specifically requested the elimination of the tax liability based on the 861 argument. The Thompson's amended tax returns and CDP hearing request also sought immunity from taxation on the 861 argument. The Graham's, Mr. Bannister submitted a letter following the CDP hearing complaining that the hearing officer refused to consider the 861 argument and essentially seeking a rehearing to offer them an opportunity to further press that argument. In the case of the Guthrie's, along with that convoluted analysis of IRS computer codes, following that was the conclusion that IRS district directors are obligated to inform each and every individual of the duties to file tax returns and pay taxes and that a failure to do so eliminated those duties or relieved those individuals of those duties. So is Mr. Bannister taking a position at the appellate level which is inconsistent with the position that he took at the due process hearings? Yes, Your Honor. That is, in fact, that there is the authority to reduce or eliminate tax liability. Yes, Your Honor, that's correct. The law is at one point the IRS argued that a taxpayer couldn't challenge the underlying liability in a CDP case where the liability was reported on the return but the IRS lost that issue in a Montgomery case and as reflected in the Poindexter case that we're citing and the IRS is acquiesced in that position so that effectively is the law of the land at this point. And regardless, he affirmatively sought to reduce. That was the whole purpose of the CDP hearings was to reduce the liability or eliminate the liabilities. And the reasons that he's offering for submitting these frivolous arguments, none of them counter the obvious purpose of reducing liabilities and, in fact, there is no plausible reason for raising frivolous claims of immunity from taxation other than the understatement of tax liabilities. And on this record, no reasonable juror could conclude that Mr. Bannister was offering these arguments on behalf of his clients for any reason other than the understatement of the liabilities. Under these circumstances, the district court's summary judgment was correct and should be affirmed. There are exceptions listed. Ordinarily in CDP hearings, you don't go into the amount of tax liability, but there are exceptions if the person had not been afforded the opportunity to raise an objection to their tax obligation in some other forum. That's one of the recognized exceptions. And the question is whether Mr. Coleman's or the Graham's, in fact, had the opportunity at some other time to raise objections to their obligations and did not do so. Do you know? I don't think the record reflects that they had opportunities to do so. So, in other words, if they didn't have an obligation to do so or if they didn't have the opportunity to do so, then the exception would apply and, in fact, the CDP hearings could result in a reduction of tax obligation. And even apart from that, the argument that was submitted to the IRS was that they did have the right to challenge the underlying liability and they were, in fact, challenging the underlying liability. So, therefore, if those documents were used for the purpose for which they were submitted and the IRS would have accepted them, it would have resulted in an understatement of liabilities. Therefore, the requirement of the statute that's at issue in this case clearly was met. So it seems like you're buying into his argument that he can only violate the statute if the result of this proceeding could have been to lower the tax liability. But I don't understand why the statute doesn't just mean stating in the proceeding officially that the tax liability is lower is an understatement of tax liability and it results in doing it in the proceeding and that's all that is needed to violate this statute. I don't understand why there has to be a possibility of the IRS believing this argument for him to be liable. It seems like all he has to do is officially make an understatement in the proceeding and he's violated the statute. I think you're correct. Yes, I agree with that. If you're submitting a document for the purpose of understating the tax liability, that is enough. That's how I read the statute, but did you make that argument in your brief? Because it seemed like you were buying into his premise in at least the majority of your brief that that isn't enough. Am I right? That wasn't our intention, no. I think it's if the statute says if the document is submitted, if used for the purpose for which it was submitted would result in an understatement, then that requirement is satisfied. So it's as simple as that. We didn't mean to argue anything. Do you agree that actual knowledge is required? Yes. And I think the evidence shows that actual knowledge in this case, they've not shown any, there's no plausible argument that he didn't have actual knowledge, that his arguments were frivolous, and that if they were accepted, they would have resulted in an understatement of the tax liability. That concludes my comments. Unless you have any other questions. Thank you, counsel. You have a minute for rebuttal. I appreciate the extra minute. The exception to the general rule that tax liability can't be altered or affected in CDPH is we're not present here. It involves a statutory notice of deficiency that was mailed to an address the taxpayer didn't receive or other circumstances not present here. The Poindexter case resolves that. IRS commissioners don't. So why was he making these arguments? I'm sorry? So why was he arguing in this proceeding that they didn't know any taxes? He is trying to prevent collection actions. The statute does require that if the document were relied upon by the IRS, that it would affect the tax liability. It's not possible. The statute should be strictly construed. I would point out Congress amended the statute in 2006 to address frivolous arguments, vexatious arguments. We just can't shoehorn these facts into this difficult situation. In terms of collateral estoppel on the two CDPHs, which Judge Due found, actual knowledge is materially higher from the scienter standpoint than willful or reckless conduct. It was an inappropriate application of collateral estoppel. But your argument about that relies on the 1051J. And wasn't he also found to have violated 1051D? Yes, which contains that it can be a reckless disregard for the veracity of legal arguments, willful conduct, or gross incompetence is also part of that. The government was correct in their Appellee's brief when they set forth the other subsections of Circular 230 under which Mr. Bannister was found, was disbarred and found to have engaged in disreputable conduct. But the scienter there is willfulness or recklessness. And as the Sansum case pointed out, the Eighth Circuit hold and the Eleventh Circuit hold, actual knowledge is higher. The best the government argues on brief is that Mr. Bannister engaged in willful blindness. And as those thoughtful court decisions articulate, that is not the scienter required for the penalty statute. I thank you for your patience. Thank you. Thank you. The case is submitted.
judges: Clifton, Friedland, Sessions